1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANDREW PHILLIP DURAN,

11          Plaintiff,                    No. CIV S-06-2876 GEB KJM P

12      vs.

13   JOHN DOVEY, et al.,

14          Defendants.             FINDINGS & RECOMMENDATIONS

15   _____/

16

17          Plaintiff is an inmate housed at Pelican Bay State Prison.  His complaint alleges

18   violations of the First, Eighth and Fourteenth Amendments and is filed under 42 U.S.C. § 1983.

19   Defendants have moved to dismiss.

20          California's Pelican Bay State Prison is a maximum security facility used to house

21   the State's most dangerous offenders.  The prison is divided into two halves.  The first maintains

22   inmates in a general population setting.  The second, the Secure Housing Unit (SHU), is reserved

23   for prisoners that pose a particular danger to prison security, among others, members of prison

24   gangs.  In March 2005, plaintiff Andrew Duran was moved from the general population into the

25   SHU pending an investigation of his gang status, which was confirmed, or "validated," shortly

26   after.  Since his initial segregation, plaintiff  has been "required to spend twenty-two and one half

                                            1

1   hours per day in . . . [a] windowless concrete cell contain[ing] a concrete stool, concrete bed,

2   concrete writing pedestal, and a stainless steel sink/toilet." Compl. at continuation page 9:20-24.

3   He complains that as a result of his solitary confinement in the SHU, he has suffered

4   psychological injuries and has been prevented from earning work time credits that could shorten

5   his sentence.  Compl. at continuation page 9:9-10:9.

6           Plaintiff unsuccessfully appealed his segregation through the internal process at

7   Pelican Bay, exhausting his administrative remedies.  See, e.g., Compl., Ex. 9 (Director's Level

8   Appeal Decision).  In March 2006, plaintiff filed a petition for habeas corpus in California state

9   court stating as grounds for relief, "[t]he institutions [sic] gang investigator used information to

10  validate me as a gang member whose usage has been barred by Castillo-v-Alameida cite omitted.

11  Also based on false, unreliable, and insufficient information."  Decl. of Rebecca Armstrong-

12  Grau, Attach. 1 (Pet. for Habeas Corpus filed Mar. 30, 2006 (State Habeas Pet.) at 3).[1]

13          Plaintiff's gang validation was based on information provided by confidential

14  informants, tattoos commonly associated with Northern Californian Hispanic gangs on his body,

15  and written materials from plaintiff's cell, including a short aspirational essay written on a sheet

16  of prison toilet paper describing the duties of "soldados for our raza," or soldiers for our race.[2]  In

---

[1]  Defendants provided a copy of plaintiff's original state petition for writ of habeas corpus and ask that this court take judicial notice of the petition.  This petition also was alluded to in plaintiff's pleadings and exhibits, which included a copy of the denial of the state petition. The petition is a matter of record and neither its accuracy nor existence can be reasonably questioned.  Accordingly, this court takes notice of it.  Fed. R. Evid. 201.

[2]  The entire essay reads:

> As soldados [soldiers] for our raza [race] we are trained and educated to be professionals in all aspects of our cause.  We are teachers and students.  Everything we do we do for the people.  We as professional soldados will always put forth the positive productive examples in everything we do, and think.  We keep a focused clear mente [mind] so that we have control in all our actions.  We are trained and educated by our fellow soldados.

> To conduct ourselves with professionalism, we are trained to do things right.  We take our time in our education and skills that we

his state habeas petition, plaintiff argued that gang investigator Lieutenant Maykel "disregarded the policy changes [of the Castillo v. Alameida settlement that] disallowed the reliance on confidential sources to place prisoners in solitary confinement unless proof of illegal gang activity existed, [and] disallowed the usage of evidence such as tattoos and ethnic art as a basis to support an allegation of gang membership and or direct association."  State Habeas Pet. at 3.  The Superior Court denied the petition on grounds that it failed to establish sufficient grounds upon which relief may be granted, and that sufficient evidence supported the administrative decision. Compl., Ex. 10 at 1.  Its decision was affirmed by the First District Court of Appeal, Compl., Ex. 10 at 2, and in response to a subsequent petition, the California Supreme Court issued a postcard denial.  Compl., Ex. 10 at 3.

Approximately a month later, on September 25, 2006, plaintiff filed a federal habeas petition with the Northern District of California.  See Pl.'s Opp'n, Ex. 2 at 1. Subsequently, he asked the court to dismiss the case so that he might pursue a civil rights claim. The action was dismissed without prejudice on October 13, 2006.  Opp'n, Ex. 2 at 2.

Plaintiff's civil rights action is brought against various members of the California Department of Corrections and Rehabilitation (CDCR) and seeks injunctive and monetary relief with respect to injuries arising from his improper placement in the SHU.  The defendants move to dismiss the complaint on three grounds: that the action is precluded by the adjudication of his state habeas claim, that these § 1983 claims cannot be brought prior to a successful habeas petition, and plaintiff fails to state a claim against two of the defendants upon which relief can be granted.

---

are taught to be.  The positive productive soldado is a professional and a professional is [text stops and continues vertically reversed]

Great care[,] thorough completeness / beginning to end[,] absolute[,] thoroughly.

Compl., Ex. 6 at 2.

1    I. <u>Res Judicata</u>

2         Section 1983 civil rights claims are subject to preclusion by state habeas corpus

3   adjudications.  <u>Hawkins v. Risley</u>, 984 F.2d 321, 323 (9th Cir. 1993) (analyzing issue

4   preclusion).  Preclusion is determined by the law of the state issuing the initial judgment.  <u>Id.</u> at

5   324 (applying Montana law to § 1983 claim); <u>Robi v. Five Platters, Inc.</u>, 838 F.2d 318, 322 (9th

6   Cir. 1988); <u>see</u> Full Faith & Credit Act, 28 U.S.C. § 1738 (requiring the federal courts to give

7   full faith and credit to state judgments).

8         Under well-established California law, "a  final judgment, rendered upon the

9   merits by a court having jurisdiction of the cause, is conclusive of the rights of the parties and

10  those in privity with them, and is a complete bar to a new suit between them on the same cause of

11  action."  <u>Goddard v. Sec. Title Ins. & Guar. Co.</u>, 14 Cal. 2d 47 (1939). Under California's

12  "primary rights theory," a single invasion of a primary right by a defendant's breach of a primary

13  duty gives rise to only one cause of action; any further causes of action alleging an invasion of

14  the same right are considered the same cause and thus barred.  <u>Weikel v. TCW Realty Fund II</u>

15  <u>Holding Co.</u>, 55 Cal. App. 4th 1234, 1245-46 (4th Dist. 1997).  In short, the issue of preclusion

16  turns on the right invaded, not the relief sought.  <u>Id.</u> at 1257.

17        Plaintiff initially filed a petition for habeas corpus on the ground that his

18  confinement in the SHU was unlawful because the CDCR, through its agents, relied on

19  information in validating him as a gang member that could not be properly considered under

20  existing state law and policy.  State Habeas Pet. at 3-5.  As noted, his petition was denied by the

21  state superior court on the merits.  Compl., Ex. 10 at 1.  His petition was subsequently denied by

22  both the First District Court of Appeal and the California Supreme Court.  Compl., Ex. 10 at 2, 3.

23  Plaintiff's current complaint alleges a violation of the same primary right to a proper

24  administrative determination and the same breach of duty by the CDCR agents, that their

25  /////

26  /////

4

1   determination violated governing law.[3]  While some of the remedies plaintiff seeks in this action

2   are unique to his current claim, such as monetary damages, the nature of the relief sought does

3   not change the underlying commonality of the current § 1983 claim and the unsuccessful state

4   habeas claim.  Both allege the violation of the same underlying right, whereas plaintiff is only

5   entitled to a single action to assert that right.  Weikel, 55 Cal. App. 4th at 1246-47.

6          The California courts denied plaintiff's claim on the merits, establishing as a

7   matter of law that the CDCR did not breach its primary duty to the plaintiff.  This court must

8   give full faith and credit to that determination.  Migra v. Warren City Sch. Dist. Bd. of . Educ.,

9   466 U.S. 75, 81 (1984).  Defendants' motion to dismiss on res judicata grounds should be

10  granted, and these grounds alone are sufficient to resolve the motion.

11        II.  Habeas Relief as a Predicate to Monetary Damages

12         Defendants also claim that the action is barred by Heck v. Humphrey, 512 U.S.

13  477 (1994), which held that a § 1983 action that would necessarily call into question the

14  lawfulness of a plaintiff's conviction is not cognizable unless the plaintiff can show his

15  conviction has been reversed.  Heck, 512 U.S. at 486-87; see also Preiser v. Rodriguez, 411 U.S.

16  475, 487 (1973).

17         In Edwards v. Balisok, 520 U.S. 641, 643 (1997), the Supreme Court ruled Heck

18  applied to actions challenging the validity of the procedures used to deprive an inmate of good-

19  time credits.  See also Wolff v. McDonnell. 418 U.S. 539, 554-55 (1974).

20  /////

21  /////

22  /////

23  /////

24

25  ───────────────

    [3]  "This action arises from the defendant's practices, acts and/or policies which have
    caused plaintiff to be wrongly placed and retained in the SHU on the basis of alleged prison gang

26  member/association.  Defendants have wrongly placed and retained plaintiff in the SHU."
    Compl. at continuation page 3:17-22.

In a recent case, <u>Wilkinson v. Dotson</u>, 544 U.S. 74 (2005), the Court addressed the application of this exception to a § 1983 challenge to Ohio's parole procedures.  As defendants note, the Court reviewed the <u>Preiser</u> line of cases and summarized the law:

> These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

<u>Wilkinson</u>, 544 U.S. at 81-82; <u>see</u> Defs.' Mot. to Dismiss at 6:11-19.  Applying the law to the facts, the Court held that the prisoners' claims were cognizable under § 1983 because they did not seek an earlier or immediate release; they did not challenge the fact or duration of confinement.  Rather, the plaintiffs only sought prospective relief to enjoin the future application of allegedly unconstitutional parole procedures.  <u>Wilkinson</u>, 544 U.S. at 82.

Defendants rely on <u>Wilkinson</u> and <u>Heck</u> and argue that plaintiff must successfully challenge his gang status before bringing a § 1983 claim.  The defendants correctly apply <u>Wilkinson</u> and <u>Heck</u> to plaintiff's claim for money damages for his past segregation, but they construe these cases too broadly to encompass all of plaintiff's requests for relief.  Plaintiff is pursuing three categories of relief, each of which must be analyzed independently.  First, plaintiff asks this court to enjoin the CDCR's current gang validation practices and eliminate inhumane conditions in the SHU.  Second, plaintiff asks the court retroactively to restore the work time credits he would have earned if not in the SHU.  Third, plaintiff seeks $100 per day for his segregation in the SHU, compensatory damages for mental anguish, punitive damages, court costs and attorneys' fees.

Plaintiff's prayer for the prospective injunction of gang validation practices falls outside the <u>Preiser</u> exception.  <u>Preiser</u>, <u>Wolff</u>, and <u>Wilkinson</u> all reiterated that the enjoining of future behavior does not call into question the existing detention of the plaintiff.  <u>Preiser</u>, 411 U.S. 498-99; <u>Wolff</u>, 418 U.S. at 554-55; <u>Wilkinson</u>, 544 U.S. at 81-82.  Put another way, relief

from future unconstitutional actions is outside the "core of habeas corpus." <u>Cf.</u> <u>Wilkinson</u>, 544 U.S. at 85 (Scalia, J., concurring) ("'[b]ecause neither prisoner's claim would necessarily spell speedier release, neither lies at "the core of habeas corpus"' and both may be brought under Rev Stat § 1979, 42 U.S.C. § 1983" (citations omitted)).

Plaintiff further asks the court to restore the work time credits he would have earned had he not been placed in segregation. This is precisely the issue that was before the Court in <u>Preiser</u>, and "an injunction restoring good time improperly taken is foreclosed." <u>Wolff</u>, 418 U.S. at 555. This court cannot reinstate any work time credits lost by the plaintiff in a § 1983 action. Similarly, under <u>Heck</u>, it cannot award money damages for plaintiff's confinement in the SHU until and unless he successfully invalidates his segregation. <u>Heck</u>, 512 U.S. at 486-87. However, plaintiff's requests for fees and costs are not barred by <u>Heck</u> and do not fall under the <u>Preiser</u> exception. Attorneys' fees and court costs are not at the heart of habeas corpus, and their award would in no way alter the fact or duration of plaintiff's confinement.

Defendants' motion to dismiss plaintiff's complaint as <u>Heck</u>-barred is not well-taken, except with respect to plaintiff's prayers for the restoration of work time credits and for money damages.

III.  <u>Failure to State a Claim</u>

Plaintiff names as defendants John Dovey as the Director of CDCR and Robert Horel as the Warden of Pelican Bay State Prison. Defendants move to dismiss plaintiff's claims against these two defendants for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Derivative liability for supervisors is not available in § 1983 claims. The defendants must act directly by actually violating the plaintiff's rights, having a sufficient causal connection to the violation, or implementing a policy that "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989). The plaintiff has not alleged any facts showing direct or indirect action by defendants Dovey and Horel violating plaintiff's constitutional rights. Plaintiff offers no more than

1  conclusory allegations, which are insufficient to state a claim upon which relief can be granted.

2  See Compl. at continuation pages 1, 13, 17-18.  "A plaintiff's obligation to provide the 'grounds'

3  of his 'entitlement to relief' requires more than labels and conclusions."  Bell Atl. Corp. v.

4  Twombly, 127 S. Ct. 1955, 1964-65 (2007).  Accordingly, defendants' motions to dismiss Dovey

5  and Horel under Rule 12(b)(6) also are well-taken, to the extent the court chooses to reach this

6  question.

7          IT IS HEREBY RECOMMENDED that defendants' motion to dismiss on

8  grounds of res judicata be granted.

9          These findings and recommendations are submitted to the United States District

10  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

11  days after being served with these findings and recommendations, any party may file written

12  objections with the court and serve a copy on all parties.  Such a document should be captioned

13  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14  shall be served and filed within ten days after service of the objections.  The parties are advised

15  that failure to file objections within the specified time may waive the right to appeal the District

16  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17  DATED:  June 23, 2008.

18

19  _____

20  U.S. MAGISTRATE JUDGE

21

22

23

24

25

26  duran f&r